IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65, plaintiff Electronic Privacy Information Center respectfully moves for entry of a preliminary injunction enjoining defendant Department of Justice from continuing to deny plaintiff expedited processing of plaintiff's Freedom of Information Act request for records concerning an August 14, 2003 memorandum from Guy A. Lewis, director of the Executive Office for United States Attorneys, to federal prosecutors regarding an amendment to a House bill sponsored by Representative C.L. "Butch" Otter.

In support of its motion, plaintiff proffers the accompanying Declaration of Marcia Hofmann, a memorandum of points and authorities, and a proposed order. Pursuant to Local Rule 65.1(d), plaintiff requests a hearing on this motion at the Court's earliest convenience.

Respectfully submitted,

_____
DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

MARCIA HOFMANN
D.C. Bar admission pending

ELECTRONIC PRIVACY INFORMATION
    CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC  20009
(202) 483-1140

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION CENTER,     )
                                                                              )
                                          Plaintiff,                          )
                                                                              )
        v.                                                                    )          Civil Action
                                                                              )
U.S. DEPARTMENT OF JUSTICE,                                 )
                                                                              )
                                          Defendant.                         )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

        Plaintiff Electronic Privacy Information Center ("EPIC") respectfully submits this memorandum of points and authorities in support of its motion for a preliminary injunction.

### Preliminary Statement

        This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of agency records concerning the lobbying efforts of United States Attorneys to oppose legislative proposals to revise or limit investigative powers authorized in the USA Patriot Act.  There has been widespread media interest in this issue, and editorials and news articles have raised serious questions as to the propriety of these lobbying activities.  As such, the requested information fits squarely within the narrow category for which Congress, and defendant Department of Justice ("DOJ"), have mandated expedited processing.

        In violation of the expedited processing provisions contained in the FOIA and its own regulations, defendant DOJ has denied plaintiff's request for expedited processing of the requested records.  DOJ's denial of plaintiff's request is substantively flawed.  Because time is at the essence of plaintiff's rights and defendant's obligations, plaintiff seeks the Court's expedited, *de novo* consideration of this matter and entry of an order compelling defendant to process and disclose the requested records immediately.

**Statement of Facts**

**A. The Patriot Act, the Otter Amendment and the August 14 Memorandum**

On October 26, 2001, the President signed into law the Uniting and Strengthening American by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. 107-56, 115 Stat. 272 ("Patriot Act").  The Act contained a plethora of legislative changes that significantly increased the surveillance and investigative powers of federal law enforcement agencies.  The Act also removed several of the checks and balances that traditionally safeguard civil liberties in the face of government investigative activities.  Not surprisingly, as this Court recently noted, "[e]ver since it was proposed, the Patriot Act has engendered controversy and debate." *American Civil Liberties Union v. Department of Justice*, 265 F. Supp. 2d 20, 24 (D.C.C. 2003).   Much of that controversy has centered on the fact that "[t]he Justice Department, which is largely responsible for [the Act's] implementation, has provided only limited information to the public regarding how, and how often, the new provisions . . . have been used." *Id.* [1]

Reflecting Congressional concern about the scope of the Patriot Act, the House of Representatives on July 22, 2003, approved a provision that would prohibit the use of appropriated funds to implement Section 213 of the Act, which permits delayed notification of the execution of a search warrant.  The provision, an amendment to the Departments of

---

[1] Many members of Congress have questioned the secrecy surrounding the exercise of Patriot Act authorities, as well as the scope of the law.  Senator Patrick Leahy recently commented, "[d]espite the Administration's unprecedented public relations campaign to promote the PATRIOT Act -- including a 16-state, 18-city tour by the Attorney General himself -- the Administration has yet to show that it is using its PATRIOT powers wisely.  Instead, it has been secretly drafting a sequel to PATRIOT that would grant it even more far-reaching powers." Statement of Senator Patrick Leahy on the Introduction of the Leahy-Craig-Sununu-Durbin-Reid Patriot Oversight Restoration Act of 2003 (October 1, 2003) ("Leahy Statement") (available at http://leahy.senate.gov/press/200310/100103g. html).

Commerce, Justice, and State, and the Judiciary, and Related Agencies Appropriations Act of

2004, H.R. 2799, 108th Cong. (2003), was sponsored by Rep. C.L. "Butch" Otter ("the Otter

Amendment").   The House passed the amendment by an overwhelming 309-118 margin and

referred the legislation to the Senate.

On August 14, 2003, Guy A. Lewis, director of DOJ's Executive Office for United States

Attorneys, sent a memorandum to all U.S. Attorneys concerning the Otter Amendment  ("August

14 memorandum").  As the Washington Post reported on August 22, 2003:

> [t]he Justice Department has urged U.S. attorneys to contact congressional
> representatives who voted against a key anti-terrorism provision of the USA
> Patriot Act, part of a broad-based publicity campaign on behalf of the law,
> according to internal documents.  An Aug. 14 memorandum from Guy A. Lewis,
> director of the executive office for United States Attorneys, encourages federal
> prosecutors "to call personally or meet with . . . congressional representatives" to
> discuss "the potentially deleterious effects" of an amendment approved in the
> House last month that would cut off funding for "sneak and peek" warrants in
> terrorism cases.  Attached to the memo is a list of names and telephone numbers
> of House members, with an asterisk next to the names of those who voted in favor
> of the amendment sponsored by C.L. "Butch" Otter (R-Idaho).

Dan Eggen, *Prosecutors Are Urged to Press Congress*, Washington Post, August 22, 2003, at

A19.

**B. Plaintiff's Request For Expedited FOIA Processing**

On September 10, 2003, plaintiff wrote to the Executive Office for United States

Attorneys ("EOUSA")  to request under the FOIA agency records concerning the August 14

memorandum. Letter from Marcia Hofmann to Marie A. O'Rourke, September 10, 2003

(attached to Declaration of Marcia Hofmann ("Hofmann Decl.") as Exhibit 1).  Plaintiff

requested:

> the August 14, 2003 memorandum from Guy A. Lewis, director of the Executive
> Office for United States Attorneys, to federal prosecutors addressing the
> amendment to H.R. 2799 sponsored by Rep. C.L. "Butch" Otter;

any attachments to the memorandum;

any assessments, analyses, or evaluations of legal issues that might govern or restrict contacts by U.S. Attorneys with members of Congress, as proposed in the August 14 memorandum;

all records submitted by U.S. Attorney's Offices in response to the memorandum, including (but not limited to) schedules, reports, forms, and electronic mail; and

all records regarding any contacts that U.S. Attorney's Offices have had with members of Congress as a result of the August 14 memorandum.

Exhibit 1 at 1.

In its letter to EOUSA, plaintiff requested expedited processing of its request and explained the urgency of disseminating information about the August 14 memorandum to the public.  Pursuant to applicable DOJ regulations, plaintiff also wrote to DOJ's Director of Public Affairs in support of its request for expedition, attaching the letter to EOUSA and incorporating it by reference.[2]  Letter from Marcia Hofmann to Barbara Comstock, September 10, 2003 (attached to Hofmann Decl. as Exhibit 2).  In its letter to EOUSA, plaintiff stated:

The government activity at issue here -- the Justice Department urging prosecutors to influence members of Congress -- raises serious questions about the propriety of political appointees and has received considerable media attention in recent days.

Exhibit 1 at 2.[3]  Plaintiff's letter noted, *inter alia*, that "[a] search in the Lexis–Nexis U.S. newspaper and wire database for articles on this subject between August 14, 2003, when the

---

[2] The DOJ regulations specify four distinct grounds for expedited processing, two of which plaintiff relies upon here.  Where a requester seeks expedition on the ground that there is "[a]n urgency to inform the public about an actual or alleged federal government activity," the request must be submitted to "the component that maintains the records requested," 28 CFR §16.5(d)(2) -- in this case, EOUSA.  Where expedition is sought on the ground that the records concern "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," the request must be directed to the Director of Public Affairs.  *Id*.

memorandum was issued, and September 10, 2003 [the date of the request] returns 31 results from newspapers throughout the country." *Id*. at 2-3.[4]

Furthermore, in support of its assertion that the August 14 memorandum is a matter that raises "questions about the government's integrity which affect public confidence," plaintiff quoted two editorials questioning the legality of the memorandum.  *Id*. at 2.  A New York Times editorial that plaintiff cited noted:

> [o]ne member of Congress, Representative John Conyers Jr., a Michigan
> Democrat, has charged that Mr. Ashcroft's lobbying campaign, in which United
> States attorneys have been asked to participate, may violate the law prohibiting
> members of the executive branch from engaging in grassroots lobbying for or
> against Congressional legislation . . . . Instead of spin-doctoring the problem, Mr.
> Ashcroft should work with the [PATRIOT Act's] critics to develop a law that
> respects Americans' fundamental rights.

*Id*. at 3 (quoting *An Unpatriotic Act*, New York Times, August 25, 2003, at A14).   Plaintiff also quoted a Washington Post editorial that said:

> [T]here's something a little unsettling about this mass deployment.  Perhaps it's
> the wholesale and seemingly involuntary nature of the enterprise:  the U.S.
> attorneys aren't requested to contact lawmakers or hold public meetings but
> instructed to do so, and given a handy form on which to report on their sessions
> with members . . . . Perhaps it's the sense that the prosecutors, while political and
> a part of a Republican administration, also ought to be at some remove from
> partisan politics . . . . Perhaps it's that the administration hasn't been nearly so
> accommodating about the importance of educating lawmakers and the public
> when it involves folks on the other side . . . . This campaign . . . uncomfortably
> blurs the line between law and politics.

---

[4]  Plaintiff attached to its letter the Lexis-Nexis search results.  Included in those results was, *inter alia*, a New York Times article dated two days before plaintiff submitted its FOIA request that reported that the Attorney General's public campaign in support of the Patriot Act "produced a barrage of headlines and evening news appearances in the dozen cities he has visited in the last three weeks . . . [a]nd the 2001 Patriot Act, with his help, is perhaps among the most identifiable and hotly debated pieces of legislation in the country."  Eric Lichtblau, *Ashcroft's Tour Rallies Supporters and Detractors*, New York Times, September 8, 2003, page A-14 (attached to Hofmann Decl. as Exhibit 3).

*Id.* at 3-4 (quoting *Mr. Ashcroft's Foot Soldiers*, Washington Post, August 23, 2003 at A22).[5]

In support of its assertion that it is "primarily engaged in disseminating information" within the meaning of the FOIA and DOJ regulations, plaintiff addressed its news collection and dissemination activities:

> EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public. This is accomplished through several means. First, EPIC maintains a heavily visited Web site (www.epic.org) that highlights the "latest news" concerning privacy and civil liberties issues. The site also features scanned images of documents EPIC obtains under the FOIA. Second, EPIC publishes a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets. The newsletter reports on relevant policy developments of a timely nature (hence the bi-weekly publication schedule). It has been published continuously since 1996, and an archive of past issues is available at our Web site. Finally, EPIC publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues. A list of EPIC publications is available at our Web site.

*Id.* at 4. Finally, plaintiff noted that "the U.S. District Court for the District of Columbia has held that EPIC is a 'news media' requester under the FOIA." *Id.* (citing *Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003)).

## C. Defendant DOJ's Denial of Expedition Request

By letter to plaintiff dated September 22, 3003, EOUSA denied plaintiff's request for expedited processing, on behalf of both EOUSA and the Director of Public Affairs.[6] Letter from Marie A. O'Rourke to Marcia Hofmann, September 22, 3003 (attached to Hofmann Decl. as Exhibit 5). The letter stated, in relevant part:

---

[5] Included in the Lexis-Nexis search results attached to plaintiff's letter was, *inter alia*, a Bangor (Maine) Daily News, editorial that noted that "directing U.S. attorneys to perform a political act -- lobbying members of Congress -- is objectionable." *Ashcroft's Roadshow*, Bangor Daily News, August 28, 2003, at A10 (attached to Hofmann Decl. as Exhibit 4).

[6] Plaintiff never received a response to its expedition request directly from the Director of Public Affairs.

> In accordance with 28 C.F.R. 16.5(d)(2), we referred your request for expedited treatment to the Director of Public Affairs, Department of Justice.  The Office of Public Affairs has informed us that they have denied your expedite request.  The Office of Public Affairs determined that the subject of your request is not one of exceptional media interest, nor does it raise any questions about the government's integrity which might affect public confidence.  Furthermore . . . [y]our letter does not support a finding that there is an urgency to inform the public about an actual or alleged federal government activity (28 C.F.R. 16.5(d)(1)(ii).  Therefore, in the absence of any such justification, I must deny your request for expedited treatment.

*Id*. at 1.

## ARGUMENT

The issues in this case are simple and not subject to serious dispute.  In compliance with the FOIA and applicable DOJ regulations, plaintiff requested expedited processing of a request seeking information concerning the August 14 memorandum.  In support of its request, plaintiff submitted specific and relevant information that clearly establishes its entitlement to expedited processing.  In violation of the statutory and regulatory requirements for expedited processing, DOJ has denied plaintiff's request for expedition.  Defendant's failure to grant the request is clearly unlawful and should be enjoined.

### I. **The Court has Jurisdiction to Grant the Requested Relief**

The Court's jurisdiction to consider this matter and grant appropriate relief is clear.  The FOIA provides, in pertinent part:

> Agency action to deny . . . a request for expedited processing . . . shall be subject to judicial review under paragraph (4), except that the judicial review shall be based on the record before the agency at the time of the determination.

5 U.S.C. § 552(a)(6)(E)(iii).  The referenced judicial review provision states, in pertinent part:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.  In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B).  *See Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001).[7]

      Plaintiff's claim is ripe for adjudication, as all applicable administrative remedies have been exhausted.  This Court has expressly held that a party seeking expedited processing of an FOIA request may seek judicial review of an agency denial of expedition without first submitting an administrative appeal of such denial.  *Al-Fayed v. CIA*, C.A. No. 00-2092, 2000 U.S. Dist. LEXIS 21476, at *7-8 (D.D.C. Sep. 20, 2000) ("Nothing in the statute or its legislative history . . . mandates administrative appeals for all denials of expedited processing before an applicant may seek judicial review.").

      As the FOIA provides, in reviewing defendant's action, "the court shall determine the matter *de novo*." 5 U.S.C. § 552(a)(4)(B); *see also Al-Fayed*, 254 F.3d at 308 ("a district court must review *de novo* an agency's denial of a request for expedition under FOIA").

## II. **Plaintiff is Entitled to Entry of a Preliminary Injunction**

      In considering plaintiff's request for the entry of a preliminary injunction compelling defendant DOJ to expedite the processing of plaintiff's FOIA request, the court must assess "[t]he familiar factors affecting the grant of preliminary injunctive relief -- 1) likelihood of success on the merits, 2) irreparable injury to the plaintiff, 3) burden on  . . .  others' interests, and 4) the public interest." *Jacksonville Port Authority v. Adams*, 556 F.2d 52, 57 (D.C. Cir. 1977) (citing *Virginia Petroleum Jobbers Association v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958), and *A Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 (D.C. Cir. 1969)). Consideration of these factors in this case establishes plaintiff's entitlement to injunctive relief.

### A. **Plaintiff is Likely to Prevail on the Merits**

      Given the clarity of plaintiff's entitlement to expedited processing of its request, plaintiff's likelihood of prevailing on the merits is extremely high.  In assessing plaintiff's

---

[7]  This Court also has jurisdiction of this case under 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States").

likelihood of prevailing, the Court must consider the merits of one discrete issue:  whether

plaintiff has satisfied the statutory and regulatory criteria for expedited processing.  Plaintiff is

likely to prevail on this issue.

The FOIA provides that "[e]ach agency shall promulgate regulations . . . providing for

expedited processing of requests for records . . . in cases in which the person requesting the

records demonstrates a compelling need and  . . .  in other cases determined by the agency."  5

U.S.C. § 552(a)(6)(E)(i).   "Compelling need" includes, "with respect to a request made by a

person primarily engaged in disseminating information, urgency to inform the public concerning

actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v).

Pursuant to the statutory directive, DOJ issued regulations establishing four grounds for

expedited processing, two of which are relevant here.  First, the regulations provide that

"requests . . . will be taken out of order and given expedited treatment whenever it is determined

that they involve   . . . [a]n urgency to inform the public about an actual or alleged federal

government activity, if made by a person primarily engaged in disseminating information[.]"  28

C.F.R. § 16.5(d)(1)(ii).  The agency regulations also require expedited processing where the

requested records concern "[a] matter of widespread and exceptional media interest in which

there exists possible questions about the government's integrity which affect public confidence."

28 C.F.R. § 16.5(d)(1)(iv).[8]  Plaintiff provided defendant DOJ with clear evidence of its

entitlement to expedited processing under both the "urgency to inform" standard and the

"government integrity" standard.

---

[8]  The "government integrity" basis for expedited processing is not statutorily mandated, but was
adopted by DOJ pursuant to the FOIA's provision for expedition "in other cases determined by
the agency."  See Edmonds v. Federal Bureau of Investigation, C.A. No. 02-1294, 2002 U.S.
Dist. LEXIS 26578 (D.D.C. Dec. 3, 2002)

## 1. <u>Plaintiff's Request Meets the "Urgency to Inform" Standard</u>

Plaintiff satisfies the first prong of the "urgency to inform" standard because it is "primarily engaged in disseminating information" within the meaning of the FOIA and the DOJ regulations.  Indeed, this Court has held that plaintiff qualifies as a "news media" requester under the FOIA.  *See Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

As plaintiff informed DOJ (and as this Court found), plaintiff systematically disseminates information to the public.  This is accomplished through several means.  Plaintiff maintains a heavily visited Web site that highlights the "latest news" concerning privacy and civil liberty issues.  It has published since 1996 a bi-weekly electronic newsletter that is distributed to over 15,000 readers, many of whom report on technology issues for major news outlets.  Plaintiff also publishes and distributes printed books that address a broad range of privacy, civil liberties and technology issues.  *See* Exhibit 1 at 4.  Plaintiff's news collection and publication activities demonstrate that it is "primarily engaged in disseminating information."

Plaintiff has also demonstrated beyond question that its FOIA request pertains to matters about which there is an "urgency to inform the public concerning actual or alleged federal government activity."  The D.C. Circuit has held that

> in determining whether requestors have demonstrated "urgency to inform," and hence "compelling need," courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.

*Al-Fayed*, 254 F.3d at 311.  All three factors are satisfied here.

First, plaintiff's request for information about the August 14 memorandum clearly "concerns a matter of current exigency to the American public."  The FOIA request implicates

serious questions about DOJ efforts to defend the Patriot Act that have received considerable news media attention in recent weeks.  In its September 10, 2003 request letter, plaintiff provided defendant DOJ with search results from the Lexis-Nexis news database that contained 31 articles from across the country regarding the August 14 memorandum, published in a twenty-seven-day period proceeding the FOIA request.  These included (and plaintiff quoted) editorials in the Washington Post and the New York Times.  Exhibit 1 and 2-3.  Plaintiff thus demonstrated that the EOUSA's issuance of the memorandum is a matter of  "current exigency to the American public."  *See, e.g. Al-Fayed*, 254 F.3d at 311 (requester must show "substantial interest, either on the part of the American public or the media," evidenced by "news reports").

Second, it is clear that "the consequences of delaying a response would compromise a significant recognized interest."  As the New York Times reported (in an article plaintiff cited to defendant) two days before plaintiff submitted its FOIA request, the Attorney General's public campaign in support of the Patriot Act "produced a barrage of headlines and evening news appearances in the dozen cities he has visited in the last three weeks . . . [a]nd the 2001 Patriot Act, with his help, is perhaps among the most identifiable and hotly debated pieces of legislation in the country."  Eric Lichtblau, *Ashcroft's Tour Rallies Supporters and Detractors*, New York Times, September 8, 2003, page A-14 (attached to Hofmann Decl. as Exhibit 3).  The current and ongoing debate on the Patriot Act will be hampered by further delay in DOJ's response to plaintiff's request.  The Supreme Court has long recognized our democracy's interest in "the 'uninhibited, robust, and wide-open' debate about matters of public importance that secures an informed citizenry."  *Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 815 (1985), quoting *New York Times Co . v. Sullivan* , 376 U.S. 254, 270 (1964).  *See also Board of Education v. Pico*, 457 U.S. 853, 876 (1982) ("the Constitution presupposes the existence of an

informed citizenry prepared to participate in governmental affairs").  That "recognized interest" clearly would be "compromise[d]" by further delay in the disclosure plaintiff seeks.

Finally, plaintiff's request indisputably concerns Federal government activity.  Defendant DOJ is the government agency "largely responsible for [the Patriot Act's] implementation," *American Civil Liberties Union*, 265 F. Supp. 2d 20 at 24, and the August 14 memorandum was issued by a DOJ official.

Because plaintiff has demonstrated that it is "primarily engaged in disseminating information" and that an "urgency to inform the public" exists "concerning actual or alleged Federal Government activity," it is legally entitled to expedited processing of its FOIA request.

## 2. Plaintiff's Request Meets the "Government Integrity" Standard

Plaintiff also demonstrated that the requested records concern "[a] matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."  28 C.F.R. § 16.5(d)(1)(iv).  It is indisputable that the subject of plaintiff's request is a "matter of widespread and exceptional media interest."  As noted, plaintiff cited more than 30 relevant news articles in its FOIA request.  Exhibit 1 at 2-3.  The articles listed in the attached Lexis-Nexis results were published in newspapers across the country, including, among other locations, Chattanooga, Tennessee;  New York, New York;  Atlanta, Georgia;  Lakeland, Florida; and Lewiston, Idaho.  *Id*.  Members of Congress have also raised questions concerning DOJ's activities in support of the Patriot Act.  *See, e.g.*, Leahy Statement; Exhibit 1 (quoting New York Times editorial noting concerns raised by  Rep. John Conyers).  Given the widespread news coverage and Congressional statements, it is clear that plaintiff's request satisfies the first prong of the "government integrity" standard.  *See Edmonds v. Federal Bureau of Investigation*, C.A. No. 02-1294, 2002 U.S. Dist. LEXIS 26578, at *10

(D.D.C. Dec. 3, 2002) (granting expedited processing under DOJ's "government integrity" standard and  noting "numerous newspaper articles in the printed press" and Congressional "interest").

It is equally clear that plaintiff's FOIA request involves DOJ activities that raise "possible questions about the government's integrity which affect public confidence."  As plaintiff noted in its request, "the government activity at issue here -- the Justice Department urging prosecutors to influence members of Congress -- raises serious questions about the propriety of political appointees."  Exhibit 1 at 2.   Indeed, the Washington Post noted in an editorial that the DOJ campaign "uncomfortably blurs the line between law and politics."  *Id*. at 3-4 (citing Washington Post editorial, August 23, 2003 at A22).  The New York Times, in its editorial on the DOJ effort, noted allegations that "Mr. Ashcroft's lobbying campaign, in which United States attorneys have been asked to participate, may violate the law prohibiting members of the executive branch from engaging in grass-roots lobbying for or against Congressional legislation."  *Id*. at 3 (quoting *An Unpatriotic Act*, New York Times, August 25, 2003, at A14).  Likewise, the Bangor (Maine) Daily News, in an editorial plaintiff cited in support of its request, noted that "directing U.S. attorneys to perform a political act -- lobbying members of Congress -- is objectionable."  *Ashcroft's Roadshow*, Bangor Daily News, August 28, 2003, at A10 (attached to Hofmann Decl. as Exhibit 4).  In short, the activities at issue here involve not only "*possible* questions about the government's integrity," but have, in fact, been the focus of *actual* questions raised by newspapers across the country, as well as members of Congress.

Because plaintiff has amply demonstrated that its request pertains to a "matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence," it is legally entitled to expedited

processing of its FOIA request under the applicable DOJ regulation.  It is also, as we have

shown, entitled to expedition under the "urgency to inform" standard.   Plaintiff is thus likely to

prevail on the merits.

**B. <u>Plaintiff Will Suffer Irreparable Injury in<br>the Absence of the Requested Injunctive Relief</u>**

Unless defendant DOJ's unlawful failure to expedite the processing of plaintiff's FOIA

request is immediately enjoined, plaintiff will suffer irreparable harm.[9]  The very nature of the

right that plaintiff seeks to vindicate in this action -- expedited processing -- depends upon

timeliness.  The courts have recognized that the requisite injury is present, and preliminary

injunctive relief is appropriate, in cases where "time is of the essence." *See, e.g.*, *United States v.*

*BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988); *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d

558, 568 (6th Cir. 1982).  Under the statutory scheme Congress established in the FOIA, it is

clear that "time is of the essence" here and that any further delay in the processing of plaintiff's

request will cause irreparable injury.  Unless defendant DOJ is ordered to process plaintiff's

request immediately, plaintiff's right to expedition under the FOIA will be irretrievably lost.

In addition to the loss of its clearly established legal right, any further delay in the

processing of plaintiff's FOIA request will irreparably harm plaintiff's ability (and that of the

public) to obtain information vital to the current and ongoing debate on the Patriot Act and the

---

[9] Given the strength of plaintiff's position on the merits, even "a relatively slight showing of irreparable injury" is adequate to justify the issuance of a preliminary injunction.  As the D.C. Circuit has held,

> [i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.  An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury.

*CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (citation omitted).  Nonetheless, plaintiff's showing of harm here is substantial.

legal implications of DOJ's lobbying efforts in support of the Act.  Hofmann Decl., ¶¶ 15-17.

As this Court recently noted, a private party (such as plaintiff) "suffers an injury-in-fact when . . .

denied information that must be disclosed pursuant to statute."  *Walker v. Cheney*, 230 F. Supp.

2d 51, 66 n.10 (D.D.C. 2002), citing *FEC v. Akins*, 524 U.S. 11, 21 (1998) and *Public Citizen v.*

*Dep't of Justice*, 491 U.S. 440, 449 (1989).

Because time is of the essence in this matter, plaintiff will be irreparably harmed unless

the Court acts now, "when it [is] still possible to grant effective relief," and before "all

opportunity to grant the requested relief [is] foreclosed*." Local Lodge No. 1266, International*

*Association of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th

Cir. 1981).

## C. Injunctive Relief Will Not Burden Others' Interests

Defendant DOJ cannot be said to be "burdened" by a requirement that it comply with the

law.  The immediate relief plaintiff seeks will require nothing more of DOJ than what the law

already mandates -- the expedited processing of plaintiff's FOIA request.  Nor will the requested

relief burden the interests of other parties who have submitted FOIA requests to defendant DOJ

in any manner beyond that foreseen by Congress.  In providing for expedited processing of

qualifying requests, Congress intended that such requests would take precedence over those that

do not qualify for such treatment.  Fulfillment of the legislative intent cannot be characterized as

a burden on any party's interests.

## D. The Public Interest Favors the Requested Relief

The final criterion for the issuance of a preliminary injunction is clearly satisfied in this

case.  The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the

general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port*

*Authority*, 556 F.2d at 59 (D.C. Cir. 1977).  Likewise, it is "axiomatic that an 'agency is required

to follow its own regulations.'" *Edmonds*, 2002 U.S. Dist. LEXIS 26578, at *9 n.3 (quoting

*Cherokee National of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997)).  Such adherence

is all that plaintiff seeks here.  The public interest will also be served by the expedited release of

the requested records, which will further the FOIA's core purpose of "shedding light on an

agency's performance of its statutory duties." *United States Dep't of Justice v. Reporters*

*Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989).  As this Court has noted,

"[t]here is public benefit in the release of information that adds to citizens' knowledge" of

government activities.  *Center to Prevent Handgun Violence v. U.S. Department of the Treasury*,

49 F. Supp. 2d 3, 5 (D.D.C. 1999).  The public interest favors the issuance of an order directing

defendant to expedite the release of the requested information.

### III. <u>The Court Should Order Defendant DOJ to Process Plaintiff's FOIA Request Immediately</u>

The applicable DOJ regulations dictate the manner in which FOIA requests requiring

expedition must be processed.  The regulations provide that DOJ components "ordinarily shall

respond to requests according to their order of receipt," 28 C.F.R. § 16.5(a), but that requests

"will be taken out of order and given expedited treatment whenever it is determined that they

[meet the criteria for expedited processing]." *Id*. § 16.5(d)(1).  "If a request for expedited

treatment is granted, the request shall be given priority and shall be processed as soon as

practicable." *Id*. § 16.5(d)(4).

The Court should order defendant DOJ to take whatever steps are necessary to complete

the processing of plaintiff's request as expeditiously as possible.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for a preliminary injunction should be granted.


Respectfully submitted,


_____
DAVID L. SOBEL
D.C. Bar No. 360418

MARC ROTENBERG
D.C. Bar No. 422825

MARCIA HOFMANN
D.C. Bar admission pending

ELECTRONIC PRIVACY INFORMATION
        CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC  20009
(202) 483-1140

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION CENTER,   )
   )
                   Plaintiff,   )
   )
  v.   )      Civil Action
   )
U.S. DEPARTMENT OF JUSTICE,   )
   )
                 Defendant.   )
                                          )

## **O R D E R**

UPON CONSIDERATION of plaintiff's motion for a preliminary injunction, defendant's response, the entire record and for good cause shown; it is this _____ day of October, 2003,

ORDERED that defendant Department of Justice, its officers, agents, servants and employees are hereby enjoined from continuing to deny plaintiff expedited processing of its Freedom of Information Act dated September 10, 2003; and it is

FURTHER ORDERED that defendant Department of Justice, its officers, agents, servants and employees shall place plaintiff's request in defendant's expedited processing queue ahead of any requests received subsequent to September 10, 2003, and shall take all steps necessary to complete the processing of plaintiff's request within the same period of time that processing would have been completed had defendant not denied plaintiff's request for expedition; and it is

FURTHER ORDERED that this Order shall remain in force until further Order of this Court.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

David L. Sobel
ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC  20009

Mark E. Nagle
Chief, Civil Division
UNITED STATES ATTORNEY'S OFFICE
555 Fourth Street, N.W.
Washington, DC 20001