```
                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA


ELECTRONIC PRIVACY INFORMATION   :
CENTER,                          :
                                 :
          Plaintiff,             :
                                 :
     v.                          :  Civil Action No. 03-2078 (JR)
                                 :
U.S. DEPARTMENT OF JUSTICE,      :
                                 :
          Defendant.             :
```

## MEMORANDUM

Plaintiff Electronic Privacy Information Center (EPIC), a public interest research organization, sued the Department of Justice on October 14, 2003, seeking an injunction that would require DOJ to expedite the processing and release of records EPIC had requested under the Freedom of Information Act (FOIA). EPIC's FOIA request was made September 10, 2003, several weeks after the Washington Post reported that the Director of the Executive Office for United States Attorneys (EOUSA) had sent a memorandum to all United States Attorneys, encouraging them to "call personally or meet with . . . Congressional representatives" to discuss the "potentially deleterious effects" of an amendment to an appropriations bill, sponsored by Representative C. L. "Butch" Otter, that would have restricted the use of appropriated funds to enforce certain provisions of the Uniting and Strengthening America by Providing Appropriate

Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub. L. 107-56, 115 Stat. 272 ("the Patriot Act").

EPIC's complaint was accompanied by a motion for preliminary injunction, which I denied summarily, on the ground that EPIC was essentially seeking a writ of mandamus, for which EPIC had failed to provide the necessary showing that the official act demanded was non-discretionary.  The denial was without prejudice to plaintiff's right to seek an expedited form of the *de novo* judicial review contemplated by FOIA.

EPIC then moved for partial summary judgment and requested that its motion be given expedited consideration.  The Department of Justice promptly responded, opposing that motion and cross-moving for summary judgment on the expedited processing issue.  Those cross-motions have been fully briefed, were argued in open court on December 10, 2003, and are now before me for decision.  I conclude, rejecting the Justice Department's spirited argument to the contrary, that I do have jurisdiction to consider the merits of EPIC's claim of right to expedited processing, notwithstanding EPIC's failure to pursue an administrative appeal within the Department of Justice.  Because I also find that EPIC has failed to demonstrate its entitlement

to expedited processing, however, I conclude that summary judgment must be granted in the government's favor.[1]

      1.  <u>Jurisdiction</u>.  "Expedited processing" of FOIA requests is a creature of amendments to FOIA enacted in 1996. <u>See</u> Electronic Freedom of Information Amendments of 1996, Pub. L. 104-231 § 8, 5 U.S.C. § 552(a)(6)(E).  The 1996 Amendments directed agencies to enact regulations for expedited processing where the requestor demonstrates a "compelling need" and "in other cases determined by the agency."  § 552(a)(6)(E)(i).  The Amendments require agencies to make determinations about whether to expedite processing, and to provide notice thereof, within ten days after the date of the request.  They also provide for "expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing." § 552(a)(6)(E)(ii)(II).  Decisions about expedited processing are subject to judicial review under a special provision enacted as part of the 1996 Amendments:

> Agency action to deny or affirm denial of a request for expedited processing...and failure by an agency to respond in a timely manner to such a request shall be subject to judicial review under [5 U.S.C. § 552(a)(4)], except that the judicial review shall be based on the record before the agency at the time of the determination.

§ 552(a)(6)(E)(iii).

---

[1] The order accompanying this memorandum actually grants partial summary judgment -- on the expedited processing issue presented by this motion.

The jurisdictional dispute is about exhaustion of administrative remedies.  The government maintains that exhaustion is a jurisdictional prerequisite to judicial review under the expedited processing provisions established by the 1996 Amendments.  Plaintiff, on the other hand, urges, and Judge Kollar-Kotelly of this Court has held, in Al-Fayed v. CIA, 2000 U.S. District Lexis 21476, *8 (D.D.C. Sep. 20, 2000), that exhaustion is not required.  Judge Kollar-Kotelly found nothing in the 1996 Amendments or their legislative history supporting the CIA's argument that administrative appeals were required in order to exhaust administrative remedies before seeking judicial review of denials of expedited processing.  She focused on the distinctive language in § 552(a)(6)(E)(iii), which provides for judicial review of agency action to "deny or affirm denial" of expedited processing requests, and she concluded that judicial review would be appropriate "at either of two moments: when the agency has denied a request for expedited processing, or when the agency has, upon administrative appeal, affirmed the denial of such a request."  Id.

As EPIC points out in its brief, the rule requiring exhaustion of administrative remedies before seeking judicial review in FOIA cases is not "automatic."  It has been applied in cases like Oglesby v. United States Department of the Army, 920 F.2d 57 (D.C. Cir. 1990), and Hidalgo v. FBI, 344 F.3d 1256 (D.C. Cir. 2003), only because of specific provisions in FOIA that are

inapplicable in the expedited processing context: under the 1996 Amendments, there is no requirement that agencies notify a requestor of the right to appeal any adverse determination or of the provisions for judicial review, and the provision for administrative appeals does not have the twenty day time limit provided for ordinary FOIA requests, § 552(a)(6)(A)(ii), but requires only "expeditious consideration" of administrative appeals, § 552(a)(6)(E)(ii).[2]  DOJ has issued regulations stating that an administrative appeal is a precondition of judicial review, 28 C.F.R. § 16.9(c), but those regulations are of no moment if they are, as I find them to be, at odds with the 1996 Amendments' allowance of an election.  "No particular deference" is owed to an agency's interpretation of FOIA.  Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1313 (D.C. Cir. 2003).

These plaintiffs were in a hurry to obtain judicial review of the Department's refusal to grant expedited processing of their request.  They might have been better advised to seek a reversal of the Department's opinion by means of an administrative appeal, but neither the statute nor applicable case law required them to do so.

---

[2]   See McCarthy v. Madigan, 503 U.S. 140, 147 (1992)(exhaustion not required where there is "an indefinite time frame for administrative action"); Schaeuble v. Reno, 87 F.Supp.2d 383, 390 (D.N.J. 2000)("the Privacy Act does not bind the INS to any definite time frame for administrative action, which weighs in favor of waiving the exhaustion requirement").

2. <u>Merits</u>. The 1996 Amendments require agencies to expedite processing in cases of demonstrated "compelling need" and defines that term to mean:

> That a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

§ 552(a)(6)(E)(v)(I-II). The Justice Department implemented the 1996 Amendments by final rule that became effective July 1, 1998, and that established four possible categories of requests that would be taken out of order and given expedited treatment. See 63 Fed. Reg. 29591 (1998). EPIC does not quarrel with the categories established by the DOJ regulations and indeed argues that its request falls under two of them: (ii) "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information"; and (iv) "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1).[3] The requestor bears the burden of

---

[3] Category (ii) apparently implements the statutory "compelling need standard," while category (iv) invokes the statutory language allowing expedition in "other cases determined by the agency." § 552(a)(6)(E)(i).

- 6 -

establishing that expedition is appropriate, Al-Fayed v. CIA, 254 F.3d 300, 305 n.4 (D.C. Cir. 2001).

      a. Urgency to inform. In Al-Fayed, the Court of Appeals set forth three factors a court must consider in determining whether a requestor has demonstrated urgency to inform, and therefore "compelling need," for expedited processing:

> (1) whether the request concerns a matter of current exigency to the American public;
>
> (2) whether the consequences of delaying a response would compromise a significant recognized interest; and
>
> (3) whether the request concerns federal government activity.

Id. at 310. These categories are to be "narrowly applied." Id.

      Both sides are looking for nuggets of language from the Court of Appeals decision in Al-Fayed, although that case dealt with facts quite different from the facts of this case. Plaintiffs in Al-Fayed had requested records relating to the deaths of Princess Diana and Dodi Al-Fayed two to three years before their requests for expedited processing. The Court of Appeals noted that one of the plaintiff's FOIA requests -- for information about a U.S. Attorney's decision not to prosecute participants in an attempted fraud that allegedly occurred in connection with the deaths of Princess Diana and Al-Fayed -- might properly be characterized as "current" but could not fairly be said to concern a matter of exigency to the American public.

Id. at 311.  The Court of Appeals also emphasized that there was no record evidence that there was substantial interest, either on the part of the public or the media, in this detail.  Id.  The Court of Appeals did not hold that "substantial . . . interest on the part of the American public or the media" amounts to "exigency."  It is nevertheless worth looking at the record that was before the EOUSA when it denied EPIC expedited processing to see just how much interest is reflected there.

This Court reviews application of the "urgency to inform" standard *de novo*, id. at 311, but my review is restricted to the record as it existed before the Justice Department at the time it denied the request for expedited processing, § 522(a)(6)(E)(iii).  As far as I can tell, the record concerning this issue, as of September 22, 2003, when EOUSA denied plaintiff's request, consisted entirely of one letter from Marcia Hofmann, staff counsel for EPIC, to Marie O'Rourke, assistant director of the FOIA/privacy unit at EOUSA, dated September 10, 2003.  The letter cites, and quotes, a Washington Post article dated August 22, 2003, reporting that the Justice Department urged U.S. Attorneys to contact Congressional representatives about the Otter Amendment, and two editorials, one in the Washington Post on August 23, 2003 and another in the New York Times on August 25, 2003, both critical of the Attorney General's "lobbying campaign" and the "mass deployment" of U.S. Attorneys.  Attached to Ms. Hofmann's letter is a printout of a Lexis-Nexis

- 8 -

search, reflecting thirty-one "hits" on a search for "Ashcroft and 'Patriot Act' and 'U.S. Attorneys' and Otter" between August 14 and September 10, 2003.  The Lexis-Nexis printout does not include all the words of the stories to which it refers, but only (apparently) lines of text including some number of words on either side of one of the search strings.  Of the thirty-one "hits," three appear to be duplicates.  Of the remaining twenty-eight, five reflect stories that were written before the Washington Post first reported the matter that is the subject of EPIC's search.  The August 22 Washington Post story (and the follow-up editorials in the Post and the New York Times) focuses on the alleged misuse of U.S. Attorneys to lobby for the Patriot Act.  The rest of the stories generally concern the Attorney General's whistle-stop tour to defend the Patriot Act.  A disproportionate number of the "hits" (ten, by my count) are from Idaho.  And, apart from the Post and Times editorials,[4] only six of the news stories that follow the first Post story on August 22 even mention the marshaling of the U.S. Attorneys for a lobbying effort.[5]

---

[4]  Whether and to what extent the editorial pages of the Washington Post and the New York Times represent American public opinion is an interesting question, but my answer (were I to give one) would be dicta.

[5]  The New York Daily News on August 22, the Salt Lake Tribune on August 23, the Idaho Statesman (twice) on August 25 and August 26, the Bangor Daily News on August 28, and the New York Times in a long, wrap-up story on the Ashcroft tour.

The record that was before EOUSA when it denied expedited processing not only failed to demonstrate the "current exigency" of EPIC's request, but also failed to demonstrate a "substantial interest, either on the part of the American public or the media, in this particular aspect of the plaintiff's allegations." <u>Al-Fayed</u>, 254 F.3d at 311.  The appearance of thirty-one newspaper articles does not make a story a matter of "current exigency."  The U.S. Attorney mobilization story apparently did not have "legs."

      b.  <u>Government's integrity</u>.  EPIC's alternative ground for expedition invokes Section 16.5(d)(1)(iv) of the Code of Federal Regulations, which provides for expedited treatment of matters of "widespread and exceptional media interest" in which there exist "possible questions about the government's integrity which affect public confidence."  For the reasons just stated, I cannot conclude upon my review[6] of the record that EPIC has established "widespread and exceptional" media interest, and its failure to do so is enough without more to affirm EOUSA's determination.[7]  As for "possible questions about the

---

[6] It appears that I should review the agency's application of its "government integrity" standard for "reasonableness" rather than *de novo*. <u>Al-Fayed</u>, 254 F.3d at 307 n.7.  Either way, EPIC has failed to establish its right to expedition.

[7] The record on this issue contains one additional document, a letter sent to DOJ's Office of Public Affairs (OPA) dated September 10, 2003.  DOJ regulations require applicants claiming a right to expedition under the government integrity category to file their petition for expedition with the agency's Office of

government's integrity," moreover, EPIC placed nothing before EOUSA except a New York Times editorial stating that Representative Conyers had charged that the Attorney General's lobbying campaign, in which U.S. Attorneys have been asked to participate, "may violate the law prohibiting members of the Executive Branch from engaging in grass roots lobbying," and a Washington Post editorial opining that the lobbying campaign "uncomfortably blurs the line between law and politics."  There is nothing in the record reflecting precisely what Representative Conyers said, or where, or when, nor was EPIC's counsel able at oral argument to provide specific information about the "law prohibiting members of the Executive Branch from engaging in grass roots lobbying" or to say how it might have been violated by a directive from the Attorney General to U.S. Attorneys, who are political appointees.

                                        JAMES ROBERTSON
                                   United States District Judge

---

Public Affairs (OPA).  EPIC's letter to OPA referenced its simultaneous letter to EOUSA.  The letter to OPA also specifically asserted that "the records we seek relate to a government activity -- the Justice Department urging prosecutors to influence members of congress -- that raises serious questions about the propriety of political appointees and has received considerable media attention in recent days," but EPIC did not offer any additional information on that issue.